## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WENDELL H. STONE COMPANY, INC. d/b/a STONE & COMPANY, individually and on behalf of all others similarly situated, | ) ) ) ) | Case No. |
| | ) | |
| Plaintiff, | ) | **CLASS ACTION COMPLAINT** |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| NATIONWIDE FUNDING GROUP CORP., a California corporation, | ) ) | |
| | ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff Wendell H. Stone Company Inc. d/b/a Stone & Company ("Stone & Company" or "Plaintiff") brings this Class Action Complaint against Defendant Nationwide Funding Group Corp. ("Nationwide" or "Defendant") to stop Defendant's practice of sending unsolicited fax advertisements and to obtain redress for all persons injured by its unlawful conduct. Plaintiff Stone & Company, for its Class Action Complaint, alleges as follows upon personal knowledge as to itself and its own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by its attorneys.

## PARTIES

1.      Plaintiff Stone & Company is a corporation incorporated and existing under the laws of the Commonwealth of Pennsylvania. Stone & Company's principal place of business is in Connellsville, Pennsylvania.

2.      Defendant Nationwide Funding Group Corp. is a corporation incorporated and existing under the laws of the State of California. Nationwide does business throughout the United States, including in the Commonwealth of Pennsylvania and in this District.

1

## JURISDICTION & VENUE

3.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §
1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*
("TCPA") a federal statute. This Court also has jurisdiction under the Class Action Fairness Act,
28 U.S.C. § 1332 ("CAFA"). The alleged Classes consists of over 100 persons, there is minimal
diversity, and the claims of the class members when aggregated together exceed $5 million.
Further, none of the exceptions to CAFA applies here.

4.     The Court has personal jurisdiction over Defendant and venue is proper in this
District because Defendant regularly conducts business in this District and a substantial part of
the events giving rise to the claims asserted here occurred in this District.

## COMMON ALLEGATIONS OF FACT

5.     This case challenges Defendant's practice of sending unsolicited fax
advertisements.

6.     The federal Telephone Consumer Protection Act of 1991, as amended by the Junk
Fax Prevention Act of 2005, 47 U.S.C. § 227, *et seq.* ("JFPA" or the "Act"), and the regulations
promulgated under the Act, prohibit a person or entity from faxing or having an agent fax
advertisements without the recipient's prior express consent, invitation, and permission. The
JFPA provides a private right of action and provides statutory damages of $500 per violation.
Upon information and belief, Defendant has sent facsimile transmissions of unsolicited
advertisements to Plaintiff and the Classes in violation of the JFPA in April 2018. (*See*
"Nationwide Fax," a true and correct copy of which is attached hereto as Exhibit A.) The
Nationwide Fax promotes the services and goods of Defendant, namely its financial products.
Plaintiff is informed and believes, and upon such information and belief avers, that Defendant

has sent, and continues to send, unsolicited advertisements via facsimile transmission in violation of the JFPA.

7.      Unsolicited faxes cause damage to their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's time that would have been spent on something else. A junk fax also invades the recipient's privacy. Unsolicited faxes prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

8.      On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendant under the JFPA.

9.      Plaintiff is informed and believes, and on such information and belief states, that this action is based on a common nucleus of operative fact because the facsimile transmissions at issue were and are being performed in the same or similar manner. This action is based on the same legal theory, namely liability under the JFPA stemming from the same faxes being sent from the same equipment. This action seeks relief expressly authorized by the JFPA: (i) injunctive relief enjoining Defendant, its employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending unsolicited advertisements in violation of the JFPA, and (ii) an award of statutory damages in the minimum amount of $500 for each violation of the JFPA, and to have such damages trebled, as provided by § 227(b)(3) of the Act.

## FACTS SPECIFIC TO PLAINTIFF STONE & COMPANY

10.     In April 2018, Defendant caused an unsolicited facsimile to be transmitted by a telephone facsimile machine to Plaintiff. (*See* Ex. A.)

11.     Nationwide profited from and received the benefits of marketing of its products and services by fax and is a responsible party under the JFPA.

12.     Defendant created or caused to be made Exhibit A hereto, which Defendant knew or should have known advertises Defendant's goods or products, and Defendant intended to and did in fact distribute Exhibit A to Plaintiff and the other members of the Classes.

13.     Exhibit A is a fact advertisement that is part of Defendant's work or operations, including its marketing of its products, which is performed by Defendant and/or on behalf of Defendant. Therefore, Exhibit A constitutes material furnished in connection with Defendant's work or operations.

14.     Plaintiff never consented or invited Defendant to send the faxes, nor has Plaintiff ever given permission to Defendant to send the Fax and had no prior relationship with Defendant.

15.     On information and belief, Defendant faxed the same unsolicited facsimile to Plaintiff and more than 40 other recipients without first receiving the recipients' express permission or invitation to send such faxes.

16.     There is no reasonable means for Plaintiff (or any other class member) to avoid receiving unauthorized faxes. Fax machines are left on and ready to receive the communications their owners actually desire and consent to receive.

17.     Defendant's facsimile did not display a proper opt-out notice as required by 47 C.F.R. 64.1200. Among other things, it did not apprise recipients of their legal right to opt out.

**CLASS ACTION ALLEGATIONS**

18.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of itself and the Classes defined as follows:

4

**No Consent Class:** All persons who (1) on or after four years prior to the filing of this action, (2) were sent, by Defendant or on Defendant's behalf an unsolicited telephone facsimile message substantially similar to Exhibit A, (3) from whom Defendant claims it obtained prior express permission or invitation to send those faxes in the same manner as Defendant claims it obtained prior express consent to fax Plaintiff.

**Insufficient Opt-Out Notice Class:** All persons who (1) on or after four years prior to the filing of this action, (2) were sent, by Defendant or on Defendant's behalf a telephone facsimile message substantially similar to Exhibit A, (3) which did not display a proper opt-out notice.

19.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the class definitions following appropriate discovery.

20.     **Numerosity:** The exact number of members within the Classes is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has sent facsimile advertisements to hundreds or thousands of consumers who fall into the definition of the Classes. However, the exact number of members of the Classes can only be identified through Defendant's records.

21.     **Typicality:** Plaintiff's claims are typical of the claims of all class members. Plaintiff received the Faxes sent by or on behalf of Defendant advertising goods and services of Defendant during the Class Period. Plaintiff is making the same claims and seeking the same

relief for itself and all class members based upon the same federal statute. Defendant has acted

the same or in a similar manner with respect to Plaintiff and all the class members.

22.     **Adequate Representation:** Plaintiff will fairly and adequately represent and

protect the interests of the Classes. It is interested in this matter, has no conflicts, and has

retained experienced class counsel to represent the Classes.

23.     **Commonality and Predominance:** Common questions of law and fact apply to

the claims of all class members. Common material questions of fact and law include, but are not

limited to, the following:

a.      Whether Defendant sent an unsolicited fax advertisement;

b.      Whether Defendant's fax advertised the commercial availability of

property, goods, or services;

c.      Whether the manner and method Defendant used to compile or obtain the

list of fax numbers to which it sent Exhibit A and other unsolicited faxed

advertisements procured prior express consent from the recipients to send the

faxes;

d.      Whether Defendant faxed advertisements without first obtaining the

recipient's prior permission or invitation;

e.      Whether Defendant sent the faxed advertisements knowingly;

f.      Whether Defendant violated the provisions of 47 U.S.C. § 227, *et seq.* and

the regulations promulgated thereunder;

g.      Whether the Faxes contained a proper "opt-out notice" that complies with

the requirements of § 227(b)(1)(C)(iii) of the Act, and the regulations

promulgated thereunder, and the effect of the failure to comply with such

6

requirements;

h.      Whether Defendant should be enjoined from faxing advertisements in the

future;

i.      Whether Plaintiff and the other members of the Classes are entitled to

statutory damages; and

j.      Whether the Court should award treble damages.

24.     **Conduct Similar to the Class as a Whole:** Class certification is appropriate

because Defendant has acted and refused to act in the same or similar manner with respect to all

class members thereby making injunctive and declaratory relief appropriate. Plaintiff demands

such relief as authorized by 47 U.S.C. § 227(b)(3), *et seq.*

25.     **Superiority & Manageability:** Common questions of law and fact predominate

over any questions affecting only individual members, and a class action is superior to other

methods for the fair and efficient adjudication of the controversy because:

a.      Proof of Plaintiff's claims will also prove the claims of the Classes

without the need for separate or individualized proceedings;

b.      Evidence regarding defenses or any exceptions to liability that Defendant

may assert and prove will come from Defendant's own records and will not

require individualized or separate inquiries or proceedings;

c.      Defendant has acted and is continuing to act pursuant to common policies

or practices in the same or similar manner with respect to all class members;

d.      The amount likely to be recovered by individual class members does not

support individual litigation. A class action will permit a large number of

relatively small claims involving virtually identical facts and legal issues to be

7

resolved efficiently in one (1) proceeding based upon common proofs; and

e.     This case is manageable as a class action in that:

i.Defendant identified persons or entities to receive the fax transmission and it is believed that Defendant's computer and business records will enable Plaintiff to readily identify class members and establish liability and damages;

ii.Liability and damages can be established for Plaintiff and the Classes with the same common proofs;

iii.Statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner;

iv.A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort and expense;

v.A class action will contribute to uniformity of decisions concerning Defendant's practices; and

vi.As a practical matter, the claims of the Classes are likely to go unaddressed absent class certification.

**FIRST CAUSE OF ACTION**
**Claim for Relief for Violation of the JFPA, 47 U.S.C. § 227,** *et seq.*
**(On Behalf of Plaintiff and the No Consent Class)**

26.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

27.     The JFPA makes unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement …" 47 U.S.C. § 227(b)(1)(C).

28.     The JFPA defines "unsolicited advertisement" as "any material advertising the

8

commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

29.     The faxes sent by Defendant advertised its financial products, were commercial in nature, and are advertisements under the TCPA.

30.     Plaintiff and the other class members never gave prior express consent, invitation or permission to receive the faxes.

31.     **The Faxes.** Defendant sent the April 18, 2018 fax via facsimile transmission from telephone facsimile machines, computers, or other devices to the telephone facsimile machines of Plaintiff and members of the No Consent Class. The Fax constituted an advertisement under the Act. The Faxes were transmitted to persons or entities without their prior express permission or invitation and/or Defendant is precluded from asserting any prior express permission or invitation because of the failure to comply with the Opt-Out Notice Requirements as explained below. Defendant violated the JFPA and the regulations promulgated thereunder by sending the Faxes via facsimile transmission to Plaintiff and members of the No Consent Class.

32.     **Defendant's Other Violations of the TCPA.** Plaintiff is informed and believes, and upon such information and belief avers, that during the period preceding four years of the filing of this Complaint and repeatedly thereafter, Defendant has sent via facsimile transmission from telephone facsimile machines, computers, or other devices to telephone facsimile machines of members of the No Consent Class faxes that constitute advertisements under the JFPA that were transmitted to persons or entities without their prior express permission or invitation (and/or that Defendant is precluded from asserting any prior express permission or invitation because of the failure to comply with the Opt-Out Notice Requirements in connection with such

9

transmissions). Defendant violated the JFPA and the regulations promulgated thereunder. Plaintiff is informed and believes, and upon such information and belief avers, that Defendant is continuing to send unsolicited advertisements via facsimile transmission in violation of the JFPA and the regulations promulgated thereunder, and absent intervention by this Court, will do so in the future.

33.     The JFPA provides a private right of action to bring this action on behalf of Plaintiff and the No Consent Class to redress Defendant's violations of the Act, and provides for statutory damages. 47 U.S.C. § 227(b)(3). The Act also provides that injunctive relief is appropriate. *Id.*

34.     The JFPA is a strict liability statute. The Defendant is liable to the Plaintiff and the other members of the No Consent Class even if it did not intend to send the faxes or to send them without first obtaining prior express invitation or permission.

35.     The Defendant knew or should have known that (a) the Plaintiff and the other members of the No Consent Class had not given express invitation or permission for the Defendant or anybody else to fax advertisements about the Defendant's goods or services; (b) the faxes constituted an advertisement; and (c) the Fax did not apprise recipients of their legal right to opt-out.

36.     The Defendant's actions caused damages to the Plaintiff and the other class members. Receiving the Defendant's junk faxes caused the recipients to lose paper and toner consumed in the printing of the Defendant's faxes. Moreover, the Defendant's faxes used the Plaintiff's fax machine. The Defendant's faxes cost the Plaintiff time, as the Plaintiff and its employees wasted their time receiving, reviewing, and routing the Defendant's unauthorized faxes. That time otherwise would have been spent on the Plaintiff's business activities. The

Defendant's faxes unlawfully invaded the Plaintiff's and other No Consent Class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiff and the other members of the No Consent Class from the sending of Defendant's advertisements occurred outside of Defendant's premises.

37.     As a result of Defendant's conduct, Plaintiff and the other members of the No Consent Class are each entitled to, under section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

38.     Furthermore, in the event the Court finds that Defendant's conduct was willful and knowing, the Court should, under section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the No Consent Class.

**SECOND CAUSE OF ACTION**
**Claim for Relief for Violation of the JFPA, 47 U.S.C. § 227, *et seq*.**
**(On Behalf of Plaintiff and the Insufficient Opt-Out Notice Class)**

39.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

40.     **Opt-Out Notice Requirements.** The JFPA strengthened the prohibitions against the sending of unsolicited advertisements by requiring, in § 227(b)(1)(C)(iii) of the Act, that senders of faxed advertisements place a clear and conspicuous notice on the first page of the transmission that contains the following among other things (hereinafter collectively the "Opt-Out Notice Requirements").

(1)     a statement that the recipient is legally entitled to opt-out of receiving future faxed advertisements – knowing that he or she has the legal right to request an opt-out gives impetus for recipients to make such a request, if desired;

(2)     a statement that the sender must honor a recipient's opt-out request within 30 days and the sender's failure to do so is unlawful – thereby encouraging recipients to opt-out, if they did not want future faxes, by advising them that their opt-out requests will have legal "teeth"; and

(3)     a statement advising the recipient that he or she may opt-out with respect to all of his or her facsimile telephone numbers, and not just with respect to the number or numbers at which fax advertisements have been received from the sender – thereby instructing a recipient on how to make a valid opt-out request for all of his or her fax machines.

The requirement of (1) above is incorporated from § 227(b)(2)(D)(ii) of the Act. The requirement of (2) above is incorporated from § 227(b)(2)(D)(ii) of the Act and the rules and regulations of the Federal Communications Commission (the "FCC") in ¶ 31 of its 2006 Report and Order (*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act, Junk Prevention Act of 2005,* 21 F.C.C.R. 3787, 2006 WL 901720, which rules and regulations took effect on August 1, 2006). The requirements of (3) above are contained in § 227(b)(2)(E) of the Act and incorporated into the Opt-Out Notice Requirements via § 227(b)(2)(D)(ii). Compliance with the Opt-Out Notice Requirements is neither difficult nor costly. The Opt-Out Notice Requirements are important consumer protections bestowed by Congress upon the owners of fax machines giving them the right, and means, to stop unwanted faxed advertisements. As a result of such requirements, a sender of a faxed advertisement who fails to comply with the Opt-Out Notice Requirements has, by definition, transmitted an unsolicited advertisement under the JFPA. This is because such a sender can neither claim that the recipients of the faxes advertisement gave "prior express permission or invitation" to receive

the faxes nor can the sender claim the exemption from liability contained in § 227(b)(1)(C) of the Act.

41.     **The Faxes.** Defendant sent Exhibit A via facsimile transmission from telephone facsimile machines, computers, or other devices to the telephone facsimile machines of Plaintiff and members of the Insufficient Opt-Out Notice Class. The Faxes constituted an advertisement under the Act. Defendant failed to comply with the Opt-Out Requirements in connection with the Faxes. The faxes failed to apprise recipients of their legal right to opt-out, or indeed provide any information regarding opting out or a means to opt-out. The Faxes were transmitted to persons or entities without their prior express permission or invitation and/or Defendant is precluded from asserting any prior express permission or invitation because of the failure to comply with the Opt-Out Notice Requirements. Defendant violated the JFPA and the regulations promulgated thereunder by sending the Faxes via facsimile transmission to Plaintiff and members of the Insufficient Opt-Out Notice Class.

42.     **Defendant's Other Violations of the TCPA.** Plaintiff is informed and believes, and upon such information and belief avers, that during the period preceding four years of the filing of this Complaint and repeatedly thereafter, Defendant has sent via facsimile transmission from telephone facsimile machines, computers, or other devices to telephone facsimile machines of members of the Insufficient Opt-Out Notice Class faxes that constitute advertisements under the JFPA that were transmitted to persons or entities without their prior express permission or invitation (and/or that Defendant is precluded from asserting any prior express permission or invitation because of the failure to comply with the Opt-Out Notice Requirements in connection with such transmissions). Defendant violated the JFPA and the regulations promulgated thereunder. Plaintiff is informed and believes, and upon such information and belief avers, that

Defendant is continuing to send unsolicited advertisements via facsimile transmission in violation of the JFPA and the regulations promulgated thereunder, and absent intervention by this Court, will do so in the future.

43.     The JFPA provides a private right of action to bring this action on behalf of Plaintiff and the Insufficient Opt-Out Notice Class to redress Defendant's violations of the Act, and provides for statutory damages. 47 U.S.C. § 227(b)(3). The Act also provides that injunctive relief is appropriate. *Id.*

44.     The JFPA is a strict liability statute. The Defendant is liable to the Plaintiff and the other class members even if it did not intend to send the faxes or to send them without first obtaining prior express invitation or permission.

45.     The Defendant knew or should have known that (a) Plaintiff and the other members of the Insufficient Opt-Out Notice Class had not given express invitation or permission for the Defendant or anybody else to fax advertisements about the Defendant's goods or services; (b) the faxes constituted an advertisement; and (c) the Faxes did not provide a cost free means for recipients of to opt-out.

46.     The Defendant's actions caused damages to Plaintiff and the other members of the Insufficient Opt-Out Notice Class. Receiving the Defendant's junk faxes caused the recipients to lose paper and toner consumed in the printing of the Defendant's faxes. Moreover, the Defendant's faxes used the Plaintiff's fax machine. The Defendant's faxes cost the Plaintiff time, as the Plaintiff and its employees wasted their time receiving, reviewing and routing the Defendant's unauthorized faxes. That time otherwise would have been spent on the Plaintiff's business activities. The Defendant's faxes unlawfully invaded the Plaintiff's and other Class Members' privacy interests in being left alone. Finally, the injury and property damage sustained

by Plaintiff and the other class members from the sending of Defendant's advertisements occurred outside of Defendant's premises.

47.     As a result of Defendant's conduct, Plaintiff and the other members of the Insufficient Opt-Out Notice Class are each entitled to, under section 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

48.     Furthermore, in the event the Court finds that Defendant's conduct was willful and knowing, the Court should, under section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Insufficient Opt-Out Notice Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Stone & Company, Inc., on behalf of itself and the classes, prays for the following relief:

1.     An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Stone & Company as the representative of the Classes and appointing its attorneys as Class Counsel;

2.     An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

3.     An order declaring that Defendant's faxes constitute unsolicited advertisements, that they lack the required opt-out language, and that Defendant sent the faxes without first obtaining prior express invitation, permission or consent of the recipients, and enjoining Defendant from further violations, and otherwise protecting the interests of the Classes;

4.      An award of pre-judgment interest;

5.      An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

6.      Such further and other relief the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

WENDELL H. STONE & COMPANY, INC., individually, and on behalf of all others similarly situated,

By:      */s/Stuart C. Gaul, Jr.*
         Stuart C. Gaul, Jr.
         Pa. I.D. No. 74529
         Gaul Legal LLC
         100 Ross Street, Suite 510
         Pittsburgh, PA 15219
         412-261-5100 (P)
         412-261-5101 (F)
         stuart.gaul@gaul-legal.com

         Steven L. Woodrow
         swoodrow@woodrowpeluso.com*
         Patrick H. Peluso
         ppeluso@woodrowpeluso.com*
         Taylor T. Smith
         tsmith@woodrowpeluso.com*
         Woodrow & Peluso, LLC
         3900 East Mexico Ave., Suite 300
         Denver, Colorado 80210
         Telephone: (720) 213-0675
         Facsimile: (303) 927-0809

         *Counsel for Plaintiff and the Putative Classes*

         *\*pro hac vice* admission to be filed